F. RONCI COMPANY, INC.

v.

NARRAGANSETT BAY WATER QUALITY MANAGEMENT DISTRICT COMMISSION et al.

Nos. 88–77–M.P., 88–102–M.P.

Supreme Court of Rhode Island.

June 29, 1989.

Christophe H. Little, Tillinghast, Collins & Graham, Nancy Gordon Solomon, Narragansett Bay Com'n, Herbret F. DeSimone, DeSimone & Leach, Providence, for plaintiff.

Richard W. Petrocelli, Visconti & Petrocelli, Ltd., David M. Campbell, Visconti & Petrocelli, Ltd., Providence, for defendant.

## OPINION

MURRAY, Justice.

This matter comes before the Supreme Court on consolidated petitions for certiorari. Both parties, F. Ronci Company (Ronci or plaintiff) and Narragansett Bay Water Quality Management District Commission (the commission or defendant), seek review of a Superior Court judgment that partially affirmed and partially reversed an order issued by the commission in its capacity as a regulatory administrative agency. Be-

fore setting forth the relevant facts giving rise to this dispute, we shall briefly describe the genesis of the commission and the extent of its regulatory powers.

In 1980 the General Assembly created the commission, an administrative agency, to combat severe water-quality problems arising from the discharge of pollutants into Narragansett Bay. In furtherance of this objective, the Legislature authorized defendant to impose limitations on the specific quantities and types of pollutants that may be discharged into its collection and treatment facilities. To ensure adherence to these discharge limitations, the commission may require a discharger of waste water to develop and implement a so-called compliance schedule. An enterprise that expells toxic water into defendant's sewerage system may further be required to construct and utilize pretreatment facilities when its waste-water emissions exceed maximum limits allowed by the commission. Failure to abide by defendant's toxicity limitations and compliance orders may result in the commission's precluding the enterprise from discharging any industrial waste water into its sewerage facilities. With this background in mind, we turn to the facts upon which the consolidated petitions rest. Because the record in the instant case is lengthy, comprising over 1,600 pages of recorded hearings and written findings, we shall extract only the most relevant and salient details from the transcript.

Ronci is a manufacturer of shoe and belt buckles. The company has two facilities in North Providence—one located at 1800 Smith Street and the other at 2 Atlantic Boulevard. One step in the manufacturing of these metal buckles involves electroplating at Ronci's Smith Street plant. Electroplating is the process by which certain precious metals are bonded to a less costly metal base in order to make the product more attractive and marketable to the consumer. An unfortunate but necessary byproduct of electroplating is the creation of waste-water streams which contain metal particles expelled in the course of the plating procedure. Ronci discharges its waste

water directly into defendant's collection and treatment facilities.

Upon analyzing samples of waste water procured from plaintiff's Smith Street plant, the commission found Ronci in violation of its effluent limitation regulations. Thereafter, the commission ordered Ronci to develop and implement a compliance schedule, which called for the construction of an elaborate pretreatment facility. The schedule was submitted by plaintiff and subsequently approved by the commission on January 17, 1985. The projected operational date of the facility was August 9, 1985. During the next seven months, however, Ronci encountered several delays in the construction of the building. The commission granted plaintiff's written requests for extensions of time as these delays occurred until December of 1985.

On January 31, 1986, following the denial of Ronci's latest request for a time extension, the commission commenced enforcement proceedings against plaintiff. A duly appointed hearing officer held lengthy hearings during May and June of 1986, taking testimony and considering evidence submitted by both parties. On December 26, 1986, the hearing officer issued an extensive decision. This decision concluded with a recommendation to the commission's executive director that a civil penalty in the amount of $219,950 be levied against Ronci and, further, that Ronci be ordered to comply with relevant electroplating-discharge standards no later than seven months after the date of the commission's decision. In the event of continued noncompliance the hearing officer recommended that plaintiff be prohibited from discharging waste water into the commission's facilities, thereby effectuating a shutdown of plant operations. The executive director in an order dated January 8, 1987, adopted the hearing officer's recommendations in their entirety. Ronci, acting pursuant to G.L.1956 (1984 Reenactment) § 42-35-15, then appealed the commission's order to the Superior Court for Providence County.

After considering arguments of counsel and examining the enabling legislation of the commission, the trial justice affirmed that portion of defendant's order which, among other things, required Ronci to construct a pretreatment facility and ordered compliance with relevant discharge standards. The trial justice, however, reversed and vacated the monetary penalty levied against Ronci, concluding that the plain and unambiguous language of the enabling act precluded the commission from imposing civil fines. Both parties filed petitions for writs of certiorari. In the interests of judicial economy, we ordered consolidation of these petitions.

Ronci challenges the commission's authority, as endorsed by the trial justice, to make findings of fact and to determine liability at an administrative hearing for regulatory noncompliance. The commission, on the other hand, seeks reversal of the trial court's decision insofar as it found defendant without authority to impose civil fines against violators of its discharge regulations. Although Ronci and the commission both raise a plethora of arguments in support of their respective positions, we need only consider the issues of merit presented for this court's determination.

■ Ronci argues that the definition of the term "integrated facility" contained in the commission's rules is vague and therefore unconstitutional. The commission has adopted regulations that classify electroplating and metal-finishing facilities as "integrated" or "nonintegrated," depending in pertinent part on the amount of waste water, if any, they discharge which is attributable to nonelectroplating operations. Under the commission's regulations, the aggregate amount of pollutants that a nonintegrated facility may expel into its waste water is restricted by "categorical standards," whereas integrated facilities are subject to a more stringent "combined waste stream formula."

At the nub of plaintiff's vagueness challenge is the following definition, the language of which reads in relevant part:

"The term 'integrated facility' is defined as a facility that performs electroplating as only one of several operations necessary for manufacture of a product at a single physical location and has *signifi-*

*cant quantities* of process wastewater from non-electroplating manufacturing operations." (Emphasis added.) 40 C.F. R. § 413.02(h).

Specifically, Ronci contends that the term "significant quantities" is vague, and therefore, its inclusion as an essential element in defining "integrated facility" renders the administrative regulation unconstitutional. Ronci also alleges that the commission applied this "completely subjective standard" to it in an arbitrary and capricious manner. We disagree.

Thomas More in his widely acclaimed *Utopia* 61 (H. Ogden 3d ed. 1949) quite aptly summarized the need for guidance from laws of sufficient clarity as follows:

"[The Utopians] think it highly unjust to bind men by laws that are too numerous to be read and too obscure to be readily understood. * * * [T]he plainest interpretation is the fairest. All laws, according to their view, are promulgated for the single purpose of teaching each man his duty. Subtle interpretations teach very few, for there are few who can understand them; the simpler and more obvious sense of the laws is clear to all. If laws are not clear, they are useless for the masses of people who need their guidance most. There might as well be no laws at all as to have laws which only men of great ability and long training can interpret. Most men lack the brains for this task and cannot spare the time from their work."

Recognizing the need for reasonably clear and unambiguous laws, the United States Supreme Court, as well as this court, has stated that a statute will normally withstand a vagueness challenge if its wording is capable of being understood by persons of ordinary intelligence. *See Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222, 227 (1972); *State v. Picillo*, 105 R.I. 364, 369, 252 A.2d 191, 194 (1969). In addition the statute must also set forth sufficient guidelines for those responsible for its application in order to guard against arbitrary or discriminatory enforcement. *Grayned*, 408 U.S. at 108–09, 92 S.Ct. at

2299, 33 L.Ed.2d at 227–28. While generally held to the same standards of validity and construction as statutes, administrative regulations have traditionally been subject to a more relaxed standard of scrutiny for vagueness, particularly when no constitutional interest is implicated by their application. *See Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498–99, 102 S.Ct. 1186, 1193–94, 71 L.Ed.2d 362, 371–72 (1982); *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110, 115–16 (1972); *see also City of Warwick v. Aptt*, 497 A.2d 721, 724 (R.I.1985).

It is apparent that the regulation in the instant case simply defines the type of facility that qualifies as integrated and in no way impinges on any constitutional right. This court believes that the phrase "significant quantities" is sufficiently clear to business people of ordinary intelligence and susceptible of a common understanding. Webster's Third New International Dictionary 2116 (1967) defines "significant" as, among other things, "having or likely to have influence or effect: deserving to be considered: IMPORTANT, WEIGHTY, NOTABLE." In addition to the significant-quantities requirement, an integrated facility must by definition have (1) both electroplating and nonelectroplating operations performed at a single plant in the manufacture of a product and (2) at least one electroplating waste-water line combining with one or more nonelectroplating waste-water lines prior to or at the point of actual or proposed treatment.

Although the inclusion of a specific term may render an administrative regulation unconstitutionally vague in some instances, we prefer to scrutinize such a regulation in its entirety for sufficient clarity and guidance. Under the more lenient vagueness test applied to regulatory statutes, we hold that the definition as a whole is sufficiently clear to alert business persons of ordinary intelligence to what type of facility and activities performed therein might qualify as integrated. We further hold that the wording of the definition provides adequate safeguards against arbitrary or discriminatory enforcement by the commission.

Even assuming arguendo that the contested language is somewhat ambiguous, we believe, and the trial justice so found, that resort to the administrative process could clarify the meaning of this definition. *See Village of Hoffman Estates,* 455 U.S. at 498, 102 S.Ct. at 1193, 71 L.Ed.2d at 371–72.

Of further significance to this court is Ronci's failure to establish a showing of prejudice resulting from the commission's alleged arbitrary or discriminatory application of the definition. Indeed, the record clearly indicates that application of the above-enunciated definition to Ronci resulted in reclassification of plaintiff's Smith Street plant from an integrated to a non-integrated facility which, as previously noted, is subject to less stringent discharge limitations. We therefore conclude that the definition at issue is not facially vague, nor was it applied in a discriminatory fashion against Ronci.

■ Resolution of this dispute requires that we examine a specific provision of chapter 25 of title 46, the commission's enabling act, in order to determine the proper forum for enforcement proceedings. The statutory language at issue is contained in G.L.1956 (1980 Reenactment) § 46–25–25.4, as amended by P.L.1984, ch. 366, § 1, which reads as follows:

"*Procedures for enforcement.—In any instances wherein there is a violation of its rules and regulations or order of the commission, the commission shall have the power to order the violator to cease and desist or to remedy such violations.* Without being required to enter into any recognizance or to give surety for costs, the executive director may institute such civil or criminal proceedings in the name of the commission for the violation of any provision of §§ 46–25–25 —46–25–25.6 or of any permit, rule, regulation or order issued pursuant thereto.

"*The superior court for Providence County shall have jurisdiction to en-*

*force the provisions of §§ 46–25–25—46–25–25.6 and any rule, regulations, permit or order issued pursuant thereto.* Proceedings for enforcement may be instituted and prosecuted in the name of the commission, and in any such proceeding on which injunctive relief is sought, it shall not be necessary for the commission to show that without such relief, the injury which will result will be irreparable or that the remedy at law is inadequate.

"*Proceedings provided in this section shall be in addition to and may be utilized in lieu of other administrative or judicial proceedings authorized by this chapter.*" (Emphasis added.)

Other proceedings that may be utilized in lieu of those described in § 46–25–25.4 are as follows: [1]

"Notwithstanding any other provision of this section, the commission shall have the authority and prescribe the appropriate procedures, after informal notice to the discharger, immediately and effectively to halt or prevent any discharge of pollutants into the facilities of the project which reasonably appears to present an imminent endangerment to the health or welfare of persons. The commission shall also have the authority and prescribe the appropriate procedures, which shall include notice to the affected discharger and an opportunity to respond to hold or prevent any discharge into the facilities of the project which presents or may present an endangerment to the environment or which threatens to interfere with the operation of the project. Procedures prescribed under this paragraph which comply in form with those provided in § 42–17.1–2(u) shall be deemed to be appropriate." Section 46–25–25, as amended by P.L.1984, ch. 366, § 1.

General Laws 1956 (1984 Reenactment) § 42–17.1–2(u), as amended by P.L.1985, ch. 304, § 1, delineates some of the powers

---

**1.** The imposition of a civil penalty pursuant to article 10.6 of defendant's regulations and G.L. 1956 (1980 Reenactment) § 46–25–25.2, as amended by P.L.1984, ch. 366, § 2, is not, as the

commission argues, a separate "proceeding" which may be utilized in addition to or in lieu of other proceedings contained in chapter 25, title 46.

and duties given the executive director of the Department of Environmental Management. Whenever reasonable grounds exist to believe that a regulatory violation has occurred, the director is authorized to make findings of fact at an administrative hearing following appropriate notice to the alleged violator. Section 42–17.1–2(u)(1)–(5). If necessary the director may issue a compliance order based on these factual findings, stating the existence of the violation and the corrective action needed to come into compliance. *Id.* Enforcement of the compliance order, in a manner similar to the procedure established in § 46–25–25.4, is accomplished through a judicial proceeding in the Superior Court. Section 42–17.1–2(u)(5). Section 42–17.1–2(u)(5) states that "upon decision following hearing, the director may institute injunction proceedings in the superior court of the state for enforcement of such compliance order and for appropriate temporary relief, and in such proceeding the correctness of a compliance order shall be presumed and the person attacking such order shall bear the burden of proving error in such compliance order * * *."

After an examination of the enabling legislation, the trial justice concluded that the clear language of the statute unequivocally established an intent on the part of the Legislature to deem the Superior Court for Providence County the exclusive tribunal for regulatory-enforcement proceedings brought by the commission. By affirming a portion of defendant's order, he also found that the commission had authority under the act to require construction of a pretreatment facility, to order compliance with its discharge regulations, and to require Ronci to cease and desist operations for continued noncompliance with its regulations.

Although in agreement with the trial justice that the Superior Court has exclusive jurisdiction over enforcement proceedings, Ronci contends that the commission had no authority to engage in factfinding and to "determine liability" at the administrative level. Essentially Ronci argues that the process of enforcing orders, which is vested in the Superior Court under § 46–25–25.4, necessarily entails the determination of liability and the process of factfinding by a jury. Any contrary conclusion by this court, claims Ronci, would be inconsistent with the statutory language of the act and our previous rulings regarding enforcement jurisdiction. We disagree.

It is crystal clear under the lucid language of the enabling act that the commission has ample authority to establish toxic-discharge limitations and, once a violation of these regulations has been established, "to order the violator to cease and desist or to remedy such violations." Section 46–25–25.4. Logic dictates that the commission must have the authority to conduct an administrative hearing and to make findings of fact in order to determine whether a business enterprise is in violation of its discharge regulations. Following the directives of § 46–25–25.4, the executive director may then institute enforcement proceedings in the Superior Court for Providence County if the alleged violator refuses to abide by the commission's compliance order. In such proceedings the commission seeks to invoke the equitable powers of the court, and therefore, no right to a jury trial attaches under the Seventh Amendment to the United States Constitution, *Tull v. United States,* 481 U.S. 412, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987), or article 1, section 15, of the Rhode Island Constitution, *Bendick v. Cambio,* 558 A.2d 941 (R.I.1989).[2]

The factual findings established at the administrative hearing are not "conclusively applied" against the alleged violator in an enforcement action, as Ronci suggests, but are presumptively correct. The trial justice who presides at the enforcement proceeding must evaluate the fairness of the agency's findings based on a thorough review of the record. A trial de novo is not necessary.

---

**2.** The Seventh Amendment in any event is not applicable to the states. *Bendick v. Cambio,* 558 A.2d 941 (R.I.1989).

If upon review of the competent evidence of record the trial justice concludes that enforcement of the compliance order is warranted, the agency's order then ripens into a judgment which is enforceable under the contempt power of the Superior Court.[3] This court will not disturb a trial justice's findings on this issue absent a showing that he or she either misconceived or overlooked material evidence or otherwise clearly erred. *See generally South County Gas Co. v. Burke*, 551 A.2d 22 (R.I. 1988). Such a standard of review is somewhat similar, though not identical, to that afforded actions for partition of real estate, *Dickinson v. Killheffer*, 497 A.2d 307 (R.I. 1985), and decisions issued by the Workers' Compensation Commission, *Harmony Service, Inc. v. Mason*, 111 R.I. 85, 299 A.2d 162 (1973). We are of the opinion that the trial justice correctly upheld defendant's compliance order, excepting the civil penalty, in light of the statutory language and competent evidence presented for his consideration.

■ Although the trial justice affirmed that portion of defendant's order regarding compliance with discharge regulations, he found the commission without authority under the plain language of the act to levy a monetary penalty against plaintiff and therefore vacated the imposition of the civil fine. The commission claims that the trial justice misconstrued the language of the enabling act and interpreted it in a manner that directly contravened defendant's regulations. In support of its position the commission extracts from the statute the permissive grant from the Legislature that "the executive director *may* institute such civil or criminal proceedings * * * for the violation of any provision of §§ 46–25–25— 46–25–25.6 or of any permit, rule, regulation or *order* issued pursuant thereto." If it were required to proceed in the Superior Court, argues defendant, the permissive language "may" would read "shall." We find defendant's argument without merit.

As final arbiter on questions of statutory construction, this court's task in interpreting an enactment is to ascertain and effectuate the intent of the Legislature and to ascribe to the statute a meaning consistent with its policies and primary purposes. *Brennan v. Kirby*, 529 A.2d 633, 637 (R.I. 1987). "The intention of the Legislature controls our consideration of the mandatory or directory character of statutory provisions. * * * If the words used in a statute are unambiguous and convey a clear and sensible meaning, we look only to those words to ascertain the intent of the Legislature." *Roadway Express, Inc. v. Rhode Island Comm'n for Human Rights*, 416 A.2d 673, 674 (R.I.1980).

We are satisfied, as was the trial justice, that the wording of § 46–25–25.4 clearly expresses the intent of the Legislature. The permissive language at issue does not grant the commission an option to choose between an administrative or a judicial forum for the pursuit of its remedy. Rather, a plain reading of the statute clearly establishes that, following exhaustion of administrative remedies, the commission's executive director may in his or her discretion institute civil or criminal proceedings for regulatory noncompliance in the Superior Court for Providence County. Such a proceeding is not mandatory but may be instituted if the executive director deems it appropriate.

The second argument advanced by defendant alleges that the trial justice failed to apply the general policy of judicial liberality in reviewing an administrative agency's interpretation of its enabling act. The defendant essentially argues that its regulations allow for the imposition of civil fines, that these regulations are entirely consistent with the enabling act, and that the trial justice failed to give due deference under principles of administrative law to its interpretation of the enabling act as contained in defendant's regulations. The commission further claims that it derives the authority to levy fines from the underlying policies of the enabling act and the liberal

---

3. We have stated that "civil contempt proceedings have not historically been subject to jury trial in our state but have been addressed to the sound discretion of the trial justice." *Bendick*, 558 A.2d at 944.

construction afforded this statute under § 46–25–36. We believe, however, that defendant's arguments are unpersuasive in light of the clear language of § 46–25–25.4.

As legislative creatures without inherent or common-law powers, administrative agencies possess no ability to promulge regulations absent a specific or implied grant of statutory authority. *Berkshire Cablevision of Rhode Island, Inc. v. Burke,* 488 A.2d 676, 679 (R.I.1985). Even though great weight is generally afforded to an administering agency's interpretation of its enabling legislation, regulations based on such an interpretation may not alter or amend the scope of the statute. *In re Advisory Opinion to the Governor,* 504 A.2d 456, 459 (R.I.1986); *Little v. Conflict of Interest Comm'n,* 121 R.I. 232, 236, 397 A.2d 884, 886 (1979). Moreover, although regulatory powers may be implied from an act's language to accomplish the purposes and goals of the statute, *Berkshire Cablevision of Rhode Island, Inc.,* 488 A.2d at 679–80, administrative agencies like the commission certainly may not enforce regulations that are in direct contradiction to the specific powers enumerated in their enabling legislation.

In the present case the commission has clearly attempted to extend its power beyond the scope of the enabling legislation. The defendant has sought to endow itself with the power to levy civil fines, which power simply did not exist under the statutory scheme at the time of this dispute. Our conclusion is borne out by a recent amendment of § 46–25–25.4, which allows for the imposition of administrative penalties by the commission in addition to those remedies promulgated in the original enactment.

The amendment to § 46–25–25.4, P.L. 1988, ch. 46, § 1, is set forth below with the relevant amendatory language emphasized:

"In any instances wherein there is a violation of its rules and regulations or order of the commission, the commission shall have the power to order the violator to cease and desist, or to remedy such violations, *and to impose administrative penalties. The commission may impose administrative penalties only in accordance with the notice and hearing provisions of section 46–25–25, section 42–35–1 et. seq., and the commission's rules and regulations.* Without being required to enter into any recognizance or to give surety for costs, the executive director may institute such *administrative,* civil or criminal proceedings in the name of the commission when *there are reasonable grounds to believe that there has been* a violation of any provision of sections 46–25–25 through 46–25–25.6 or of any permit, rule, regulation or order issued pursuant thereto. *It shall be the duty of the attorney general to carry out all such criminal proceedings initiated by the executive director.*

"The superior court for Providence county shall have jurisdiction to enforce the provisions of sections 46–25–25 through 46–25–25.6 and any rule, regulations, permit or *administrative* order issued pursuant thereto."

The amended statutory language expressly authorizes the commission to impose administrative penalties in accordance with chapter 25, title 46 of the General Laws and article 10.6 of defendant's regulations. We believe that this is precisely the type of specific statutory grant that the commission needed before levying a civil fine against plaintiff. Absent this amendatory language, we are constrained to conclude that at the time of this dispute defendant had no power as a creature of statute to require that Ronci pay $219,950 in civil penalties. Consequently we hold that the trial justice committed no error in vacating the fine levied against Ronci.

■ Assuming that defendant presently has the power to impose civil fines under the amended statute, we are brought to the subsidiary consideration of whether the right to a jury trial attaches under our State Constitution to a proceeding wherein the commission seeks the imposition or enforcement of a civil penalty. In *Bendick v. Cambio, supra,* we recently analogized an action for civil penalties to an eighteenth-century action in debt which required trial

by jury under English common law. This court in *Cambio* further declined to follow the view enunciated by the majority of the Supreme Court in *Tull v. United States, supra,* insofar as it restricted the role of the jury in civil-penalty actions solely to one of determining liability. Instead we chose to adopt the view espoused by dissenting Justice Scalia, who along with Justice Stevens strenuously argued that the jury's role in civil-penalty proceedings should include both the determination of liability and the assessment of penal damages. Under the law of this jurisdiction, a *fortiori,* the jury in an enforcement proceeding for civil penalties brought under the present version of § 46-25-25.4 would be entitled to increase, decrease, or vacate any fine levied by the commission against a violator of defendant's regulations.

With regard to the remaining issues raised by the parties, we have carefully reviewed the record and find them to be without merit. Consequently we affirm the trial justice's ruling in all respects.

For the reasons stated, the petitions for certiorari are denied. The writs heretofore issued are quashed. The judgment of the Superior Court is hereby affirmed in its entirety, and the papers in the case may be remanded to the Superior Court with our decision endorsed thereon.