**Elizabeth V. BOGOSIAN**

v.

**James H. WOLOOHOJIAN, Harry J. Woloohojian, Woloohojian Realty Corporation.**

**Civ. A. No. 88-0373B.**

United States District Court,
D. Rhode Island.

Oct. 5, 1990.

Matthew F. Medeiros, Providence, R.I., for plaintiff.

William Grimm, Hinckley, Allen, Snyder & Comen, Providence, R.I., for defendants.

OPINION

FRANCIS J. BOYLE, Chief Judge.

The plaintiff Elizabeth V. Bogosian, as owner of one third of the capital stock of Woloohojian Realty Corporation, filed a petition on January 19, 1989 in part to liquidate the defendant corporation under the provisions of Rhode Island incorporation law. Plaintiff's brothers, James and Harry Woloohojian, also named as defendants, each owned one third of the corporation's capital stock when the plaintiff filed her complaint. As authorized by the provisions of R.I.Gen.Laws § 7-1.1-90.1 (1985), the corporation filed an election to purchase the plaintiff's stock on February 16, 1989 in lieu of dissolution. Defendants now con-

tend that the corporation has an absolute right to revoke its election.

Woloohojian Realty Corporation appears to have been a very successful business venture, participating in the ownership and management of substantial real estate interests within Rhode Island—valued in the millions of dollars. The company had employed all three of the stockholders and some of their children. The amended complaint asserts that some of the family members have been compelled to give up their corporate owned Mercedes Benz' and other corporate perks. The amended complaint and answer are also conspicuous evidence of the acrimony among the parties who while jousting over millions of dollars find cause to complain for damages allegedly sustained in the loss of a vanity auto registration plate. Upon the falling out of the stockholders, plaintiff and her son and daughter were discharged as employees of the company.

Harry Woloohojian died on September 8, 1989 and thereafter James Woloohojian, then the sole remaining officer of the company suffered a serious stroke which incapacitated him for a period of time. A large commercial bank and the widow of Harry Woloohojian qualified as the executors of his will.

On April 18, 1990, before her brother's stroke, plaintiff filed a motion to require the corporation to provide security in support of its election to purchase her stock, and also sought an order of the court granting her an advance on account of the value of her stock because of her then strained financial circumstances. The motion was heard after her brother's stroke on July 11, 1990, and was granted. The Court ordered the corporation to provide a bond in the amount of $10,000,000 (an amount equal to the bond ordered posted by a local probate court for Harry Woloohojian's estate) or to provide real estate surety, and to make a payment of $100,000 to plaintiff by July 15, 1990, and also to pay to plaintiff $10,000 monthly on account of the purchase price of her stock until the appraisal proceedings are concluded. The Court also entered an order on July 31, 1990 appointing an appraiser for the fair value of the stock and establishing the procedural details for the appraisal. Counsel were also directed to meet with the appraiser concerning the appraisal procedure.

At the first meeting with the appraiser after the corporation had been ordered to post a bond and make payments to plaintiff, counsel for the defendants announced that defendant, Woloohojian Realty Corporation, intended to revoke its election to purchase plaintiff's shares. Defendants have filed motions the upshot of which is to ask this Court either to permit the revocation of the election to purchase plaintiff's shares, or to affirm the revocation of the election. Plaintiff objects to either result.

Between February 16, 1989, the date of the corporate election and the present, not only has one of the individual defendants died and the other individual defendant suffered a serious illness, but other significant events have occurred. The parties have engaged in very substantial and expensive discovery and sought the assistance of the Court on many occasions, in particular, for a study of the corporate books and records by the plaintiff's experts to ascertain the value of the corporate assets. Also, during this period of time the value of real estate in general has declined in Rhode Island, as well as in the northeast part of the country.

The plaintiff contends that the corporation's election to purchase her stock at fair value may not now be unilaterally withdrawn.

The election was made in accord with the provisions of R.I.Gen.Laws § 7–1.1–90.1 (1985). This section is entitled "Avoidance of dissolution by stock buyout." It provides in part that:

> [w]henever a petition for dissolution of a corporation is filed by one or more shareholders (hereinafter in this section referred to as the "petitioner") ... the corporation or one or more of its shareholders may avoid such dissolution by filing with the court prior to the commencement of the hearing, ... an election to purchase the shares owned by the petitioner at a price equal to their fair

value.... If the parties are unable to reach an agreement as to the fair value of such shares, the court shall, upon the giving of a bond or other security sufficient to assure to the petitioner payment of the value of such shares, stay the proceeding and determine the value of such shares, in accordance with the procedure set forth in § 7–1.1–74, as of the close of business on the day on which the petition for dissolution was filed.... The petitioner shall be entitled to interest on the purchase price of such shares from the date of the filing of the election to purchase such shares, and all other rights of the petitioner as owner of the shares shall terminate at such date....

There is no Rhode Island case construing this statute.

Statutes are to be construed according to the ordinary meaning of the terms used by the legislature, *State v. Zorillo*, 565 A.2d 1259, 1261 (R.I.1989), and to realize the legislature's intent. *Ronci Co., Inc. v. Narragansett Bay Water Quality Management District Commission*, 561 A.2d 874, 880 (R.I.1989). Here the legislative purpose is quite obvious. In those circumstances involving an acrimonious relationship among the stockholders in which one or more stockholders seek dissolution, the statute provides the corporation and the other stockholders an escape hatch by requiring the dissidents to sell their shares to either the corporation or the other stockholders. Thus, the continued corporate existence is assured if one or more shareholders wish to do so. The statute seeks to preserve the ongoing value of the corporation from the perils of a liquidation sale.

The process is also quite clear. The election may be made either by the corporation or by any other stockholder. If the parties are not thereafter able to agree on the fair value of the stock the court shall stay the liquidation proceeding upon the giving of a bond or other sufficient surety to assure the payment for the shareholder's stock. The statute then provides for an appraisal "in accordance with the procedure set forth in § 7–1.1–74...." That section provides for the appointment of an appraiser for the stock of shareholders exercising their rights to dissent from mergers, consolidations, sale or exchange of substantially all of the corporation's assets or any acquisition requiring shareholder approval. This statute, it should be noted, also specifically provides that a shareholder may not later withdraw a demand for payment without the consent of the corporation.

Under the election and buyout provisions of R.I.Gen.Laws § 7–1.1–90.1 (1985), a shareholder's stock is valued as of the close of business on the day the dissolution petition is filed. In this instance, that date is January 18, 1989. Interest is then due the shareholder on the fair value of the stock from the date of the filing of the election, in this case February 16, 1990. As required by the statute, all rights of plaintiff as owner of one third of the corporation's capital stock terminated on February 16, 1990.

At the outset, defendants argue that the corporation's election to purchase the plaintiff's shares is freely and unilaterally revocable. They rely on *Rey v. Pan American Cash & Carry Corp.*, 152 A.D.2d 246, 548 N.Y.S.2d 524 (1989) and *Brodsky v. Seaboard Realty Co.*, 206 Cal.App.2d 504, 24 Cal.Rptr. 61 (1962) in support of this argument.

In *Rey, supra*, the court allowed a stockholder to revoke his election to purchase shares in lieu of corporate dissolution under the New York statute which was silent on the issue of revocation at the time of election. The court considered an amendment to the statute, enacted after the stockholder's election, which prohibited revocation unless the court determined it is just and equitable under the circumstances. The court interpreted the initial legislative silence concerning revocation in the earlier statute as implicating revocation at will. The court also considered that the corporation's principal asset, a building, was destroyed by fire after the stockholder's election. The court was impressed because the electing stockholder had not engaged in delaying tactics to force the other shareholder to sell his stock at an unfairly low price. It concluded that regardless of

whether or not the amendment to the election statute was applied retroactively, the stockholder could properly revoke his election because it was just and equitable under the circumstances.

In *Brodsky, supra*, the court held that under a California statute permitting shareholder election to purchase corporate shares instead of dissolution, the court in its discretion could permit the electing shareholder to revoke an election. The court relied on statutory language permitting the court to order dissolution if the electing shareholder failed to pay for the shares within the time specified by the court. The trial court had evidence that the electing shareholder had contributed the vast majority of the corporation's capital, personally guaranteed a loan to the corporation, and drawn no salary since the stay pending appraisal was issued. There was also evidence that the non-electing shareholder resigned as vice-president and director before he filed for dissolution, and refused to contribute time and money to the corporation in violation of an agreement with the electing party. Also, the corporate faced dire financial circumstances, including defaults in payments on trust deeds. Finding that the trial court did not abuse its discretion in allowing the shareholder's revocation of his election, the judgment below was upheld.

It is true that the Rhode Island Statute does not expressly state that the election to purchase the plaintiff's stock is irrevocable. Defendants point to the lack of such language and the fact that in other statutes, such as § 7–1.1–74, the General Assembly of the State of Rhode Island expressly made elections irrevocable. From this they conclude that the corporation's election is revocable at will, and insist that the election to purchase the plaintiff's stock has been effectively revoked.

If the New York or California statutes considered in *Rey, supra,* and *Brodsky, supra,* were more similar to R.I.Gen.Laws § 7–1.1–90.1, the defendants' argument might have some bite to it. The differences, however, are remarkable. New York Business Corporation Law § 1118 did not provide for a bond to be posted after election. More importantly, neither the New York statute nor the California statute provided for immediate termination of the non-electing stockholder's rights, or for payment of interest after the election. The Rhode Island statute, however, does contain these provisions.

A strong and probably successful argument can be mounted that the Rhode Island General Assembly did not authorize revocation at will of the election to purchase plaintiff's stock. The purpose of the statute, to bring peace to the troubled waters roiled by stockholder dissent, would result in a fragile peace if the corporation could simply withdraw its election on a whim. This construction of the statute would provide a corporation a potent weapon to temporarily silence an opposing stockholder, since during the interregnum between the filing of an election and its later withdrawal, the opposing stockholder is effectively denied all rights qua stockholder. Thus, in this instance, for the period between February 16, 1990, the date of the corporate election, and August 10, 1990 the date of the purported revocation, the defendant shareholders conducted the corporation's affairs as they pleased without the need to consult with or consider the views of the plaintiff. Now, following the purported withdrawal of the election, defendants must acknowledge that the plaintiff's rights as a stockholder are revived, without any real remedy, however, for the denial of her rights as a stockholder while the corporation persisted in its election. It should not be expected that the General Assembly of the State of Rhode Island intended to vest such capricious power in a corporation or that it intended to deny an opposing shareholder her rights so completely and without a remedy. Of course, the statute must be construed to avoid such an absurd result. *Souza v. Erie Strayer Co.,* 557 A.2d 1226, 1228 (R.I. 1989).

It is not necessary, however, to go quite so far in this instance. Here it is clearly inequitable to permit the corporation to act in so cavalier a fashion. The effect of the corporation's fickle behavior is to change

the date on which the plaintiff's stock would be valued to the detriment of the plaintiff. Under the election, the plaintiff's stock would be appraised at its fair value on the date of the filing of the complaint for dissolution, January 19, 1989. If the corporation were liquidated, plaintiff would receive the liquidation value under present circumstances, on a date some years thereafter. It is clear that there are remarkable differences to be expected between fair value at the time of election and liquidating value. The forced liquidation sale of a corporation's assets can be expected to be less than a sale made without compulsion. There is also the fact that real estate values have generally declined in the interim. The fair value of one third of the corporate stock at the time of the election is probably more than the liquidation value of one third of the corporation.

Moreover, the position of the plaintiff has been changed by the action of the corporation. She has been excluded from participating in the corporation as a shareholder in the interim. Whether the corporation has taken action or declined to take action in the interim is beside the point; the plaintiff has been effectively excluded from participating in the decision making process by the unilateral action of the "corporation" since the filing of the election. In fact, her two brothers have simply used the statute as a device to exclude her from participating in corporate affairs. It would be highly inequitable to require her to now accept a different value at a different time, when she has been frozen out of the corporate affairs so effectively by the unilateral action of the corporation orchestrated by her brother stockholder opponents.

Defendants also argue that the fault lies with the plaintiff because she did not move for the filing of a bond or other security until April 18, 1990. The short answer to this proposition is that the statute does not impose such a duty upon the plaintiff. The statute provides that if the shareholders cannot agree, then the court shall, upon the giving of bond or other security, stay the liquidation proceeding. The statute does not impose a duty on the plaintiff to require the defendant corporation to file a bond or other security. Indeed, a common sense interpretation of the provision suggests that in the first instance it would be the electing defendant corporation that would take the initiative.

The defendants assert with some vigor that the equities are on their side citing the death of one of the stockholders and the illness of the other. The argument is that the management team which they expected to be in place following the corporation's election is no longer available, and therefore that the corporation should be relieved of any responsibility it has under the election. This argument would have a little more meat on the bone if the election in the first instance had been made by the shareholders, who could have done so but did not. It is the corporate election which is the concern of this proceeding. Had the stockholders personally taken responsibility for the action instead of acting through the corporation, it might be possible to find that their continued personal participation was really a significant consideration. Instead, they chose to make the corporation responsible to the plaintiff. Because the majority stockholders chose to make the corporation the responsible party, it is not possible to view their personal protestations seriously.

It has already been pointed out how unfair and oppressive the result contended for by the defendants would be to the plaintiff. In comparison, the burdens upon the defendants are insignificant. Although one of the stockholders has died, he has been succeeded by his wife and a large commercial bank as his executors. There is nothing in the record to suggest that neither is possessed of adequate business judgment to effectively assist in operating the corporation's business. Further, although having suffered a serious illness, there is likewise nothing to suggest that the remaining individual stockholder does not possess or is incapable of exercising his business judgment in any different fashion than he has for the many years that the corporation has succeeded in its business endeavors. The plaintiff's suggestion that this change of heart is the result of a good

deal gone bad because the decline in real estate prices make the fair value of the stock in February 1989 more than the liquidating value now, clearly has some merit to it.

Balancing the equities, it is the plaintiff who has the weightier argument. Thus, without resorting to a precise determination that the statute does not permit revocation of the corporate election, it would be inequitable in these circumstances to permit the corporation to renege on its pledge to pay plaintiff fair value for her stock.

Defendant's motions to permit or confirm revocation of the corporation's election to purchase plaintiff's shares at fair value are denied and the parties shall proceed in accord with the order entered July 31, 1990 to determine the fair value of the plaintiff's capital stock.

SO ORDERED