NATIONAL VELOUR CORPORATION

v.

Louise DURFEE, in her capacity as Director of the State of Rhode Island Department of Environmental Management.

No. 93–265–Appeal.

Supreme Court of Rhode Island.

Feb. 21, 1994.

Elaine T. Bucci, North Providence, for plaintiff.

Lauren E. Jones, Jones Associates, Terence Tierney, Asst. Atty. Gen., Kendra Beaver, Mark W. Siegars, Dept. of Environmental Management, Providence, for defendant.

Daniel J. Schatz, Sheldon Whitehouse, Jeffrey Greer, Dept. of Business Regulation, amicus curiae.

OPINION

WEISBERGER, Justice.

This case comes before us on the basis of two certified questions from the Superior Court, pursuant to G.L.1956 (1985 Reenactment) § 9–24–27, concerning a party's right to a jury trial for certain environmental-enforcement proceedings. The relevant facts are not in dispute and are as follows.

National Velour Corporation (National Velour) is a Rhode Island corporation engaged in surface coating.[1] On May 14, 1990, the

---

1. "Surface coating" is currently defined in the Rhode Island Department of Environmental Management Air Pollution Control Regulation No. 19.1.2 as

"a process whereby a layer of one or more substances is deposited on another material (substrate) in a uniform manner across the surface of the substrate. The layer of coating may be used for appearance, to decorate,

Rhode Island Department of Environmental Management (DEM) issued a Notice of Violation and Order and Penalty (notice) to National Velour, alleging that National Velour had violated various sections of G.L.1956 (1989 Reenactment) chapter 23 of title 23. Specifically, DEM alleged that National Velour violated DEM's Air Pollution Control Regulation No. 19 (regulation No. 19), enacted pursuant to § 23–23–5. Regulation No. 19, entitled "Control of Volatile Organic Compounds from Surface Coating Operations," mandates that any operation using greater than five gallons of certain volatile organic compounds (VOCs) in its surface-coating activities must register with and annually report to DEM's Division of Air and Hazardous Materials. Regulation No. 19 further enumerates various emission standards that must be met by any operation producing more than 100 tons of VOCs a year.

In the notice DEM cited National Velour for violating both the registering and reporting requirement since 1980 and the emission-limitation standards since 1982. The notice additionally ordered National Velour to remit $205,000 as an administrative penalty for the violations.[2]

On August 1, 1991, National Velour filed a Motion to Dismiss and to Limit the Penalty with the Administrative Adjudication Division of DEM (AAD). The DEM thereafter filed an objection to the motion and moved for summary judgment against National Velour. Following arguments on the motions, the AAD hearing officer issued a decision and order denying National Velour's motions and granting DEM's motion for summary judgment. Louise Durfee, the director of

DEM, adopted the decision and order of AAD as a Final Agency Order on December 15, 1992.

In the order the hearing officer had not ruled on the propriety of the proposed administrative penalty. In a notice dated February 4, 1993, the hearing officer set March 22, 1993, as the hearing date for the issue. However, before the hearing on the administrative penalty could be held, National Velour filed a complaint in Superior Court, seeking a declaratory judgment that DEM's imposition of an administrative penalty violated National Velour's right to a jury trial guaranteed by the Rhode Island Constitution. National Velour also moved for injunctive relief to enjoin DEM from proceeding with an administrative hearing on the administrative penalty. Although the Superior Court denied National Velour's motion for a temporary restraining order, the AAD hearing officer granted a stay in the administrative proceedings. By agreement of the parties the Superior Court subsequently certified the following two questions to this court:

"1. Is the administrative procedure for the determination of civil liability and the assessment of administrative penalties for environmental violations pursuant to [Rhode Island General Laws §§ ]42–17.6–3, 42–17.6–4, 42–17.7–2, and [42–]17.7–6 violative of the Rhode Island Constitution, Article 1, Section 15 and void, in that it does not provide the accused with the right to a trial by jury?

"2. Are R.I.Gen.Laws, Section 42–17.6–5 and a portion of the Administrative Procedures Act, R.I.Gen.Laws, Section 42–35–15(f), as they pertain to the appeal of an

bond, protect, strengthen, functionalize and/or impart stability, water or acid repellence or mildew resistance."

2. The DEM purportedly arrived at the amount of the penalty using the "Rules and Regulations for Assessment of Administrative Penalties" promulgated by DEM pursuant the statutory mandate of G.L.1956 (1988 Reenactment) chapters 17.1, 17.6, and 35 of title 42. As authorized under the rules, DEM calculated the penalty amount by using a federal formula for similar federal air-pollution violations and then reduced that amount to include just the "gravity component" of the federal penalty calculation.

Questions of the amount of the penalty and the proper statutory authority under which DEM proceeded were in dispute at an administrative hearing below and may be the subject of the action still pending both at the administrative level and in the Superior Court. Because the action before us involves only the two questions certified by the Superior Court, we make no comment concerning the appropriateness or validity of the imposition of the penalty in question—suffice it to note that DEM imposed the fine as an administrative penalty pursuant to chapter 17.6 of title 42 and the rules promulgated thereunder.

administrative determination of the assessment of [DEM] administrative penalties pursuant to [§§ ]42–17.6–3, 42–17.6–4, 42–17.7–2, and 42–17.7–6 violative of the Rhode Island Constitution, Article 1, Section 15 and void, in that they do not provide the accused with the right to a trial by jury on appeal?"

We answer both questions in the negative.

## I

In the past we have had occasion to discuss the right to a jury trial guaranteed in article 1, section 15, of the Rhode Island Constitution as it relates to state administrative regulation.[3] *See Calore Freight Systems, Inc. v. State*, 576 A.2d 1214 (R.I.1990); *F. Ronci Co. v. Narragansett Bay Water Quality Management District Commission*, 561 A.2d 874 (R.I.1989); *Bendick v. Cambio*, 558 A.2d 941 (R.I.1989). In *Bendick v. Cambio* DEM had brought an action in the Superior Court to enforce a consent order entered into between it and the defendant regarding violations of provisions of the Fresh Water Wetlands Act, G.L.1956 (1976 Reenactment) §§ 2–1–20 and 2–1–21(a), and the Water Pollution Act, G.L. 1956 (1980 Reenactment) chapter 12 of title 46. 558 A.2d at 942. Although the enforcement of the consent order was brought as an equitable action, DEM had brought additional counts (not involving the consent order) originally in the Superior Court. We likened the original Superior Court action to an action for debt that was triable by a jury at common law. Because the action for debt existed in 1843 when section 15 of article 1 of our constitution was adopted, we held that the section–15 jury-trial right adhered to the environmental action commenced in the Superior Court.

In holding that this right existed pursuant the Rhode Island Constitution, we followed the reasoning of the United States Supreme Court in *Tull v. United States*, 481 U.S. 412, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987). In *Tull* the Court established that a right to jury trial existed pursuant to the Seventh Amendment to the Constitution of the United States[4] in an action brought in Federal District Court to enforce provisions of the Federal Clean Water Act, 33 U.S.C. §§ 1251 to 1376. The Supreme Court concluded that the relief sought in the environmental-enforcement action was analogous to an action for debt, which existed at common law when the Seventh Amendment to the United States Constitution was ratified in 1791 and which actions were tried before juries in courts of law. *Tull*, 481 U.S. at 418–21, 107 S.Ct. at 1836–37, 95 L.Ed.2d at 373–75. Although we agreed with the majority opinion in *Tull* regarding the nature of an environmental-enforcement action brought in court as being akin to the action for debt, we adopted the reasoning of the opinion of Justice Scalia (concurring in part and dissenting in part) and held that a party also had maintained the right to have a jury increase or decrease the amount of the civil penalty imposed.

We next addressed the jury-trial right as it relates to environmental-enforcement proceedings in *F. Ronci Co.* There the issue was whether the General Assembly had assigned determination of environmental liability to the water-quality commission (a state administrative agency) and then allowed only for enforcement of the civil penalty in the Superior Court. We noted that a subsequent change in the commission's enabling statute gave it the authority to impose the civil penalty but that the change did not apply to the action against F. Ronci Co. 561 A.2d at 881. We held that at the time of F. Ronci Co.'s alleged violation the agency had no power to impose the civil penalty and that the civil penalty imposed by the commission was therefore properly vacated by the Superior Court. *Id.* We concluded by hypothesizing that a jury-trial right might have attached if

3. Article 1, section 15, of the Rhode Island Constitution provides:

"The right of trial by jury shall remain inviolate. In civil cases the general assembly may fix the size of the petit jury at less than twelve but not less than six."

4. Note that in *Bendick v. Cambio*, 558 A.2d 941 (R.I.1989), we held as an initial matter that the Seventh Amendment to the United States Constitution is one of the few amendments in the Bill of Rights that does *not* apply to the states through the Fourteenth Amendment. 558 A.2d at 942–43.

the commission had in fact had the authority to impose the civil penalty in the first place. *Id.* at 881–82.

Finally, in *Calore Freight Systems, Inc.*, we determined that no jury-trial right existed in a proceeding that imposed an administrative penalty for violating the weight limitations for trucks traveling on Rhode Island highways. The Department of Transportation (DOT) was authorized to levy fines against those operating overweight trucks pursuant G.L.1956 (1982 Reenactment) § 31–25–16, as amended by P.L.1985, ch. 445, § 1. Because the application of the fines was fairly mechanical in nature, we concluded that a "jury would have no role in the determination or alteration of the fines." 576 A.2d at 1217. Because the General Assembly assigned enforcement of the penalty to the AAD of the DOT and the District Court was given only appellate review of the proceeding, we held that the application of the fixed penalty could properly be assigned to an administrative proceeding and a jury-trial right under article 1, section 15, did not adhere.

In none of the three cases above did we directly address the questions presented to us today. Although *Bendick* suggests that a jury-trial right adheres under section 15 of article 1 in certain environmental-enforcement proceedings, that determination was based on the fact that the actions originated in the Superior Court. We specifically stated that the action in question was pursuant to statutes "that are enforceable only in the Superior Court and *are not susceptible of imposition by administrative proceedings.*" (Emphasis added.) 558 A.2d at 945. In *F. Ronci Co.* we upheld the Superior Court ruling which determined that the water-quality commission had no authority under its enabling statute to impose administratively the civil penalty against the alleged violator. Although we hypothesized that a jury-trial right might have adhered if the commission had proceeded under its subsequent enabling statute, we decided the case on the grounds that the Legislature did not grant the authority for the administrative agency to impose the civil penalty in the first instance. In *Calore Freight* we determined that no

jury-trial right existed in a Superior Court enforcement proceeding of an administratively imposed civil penalty. We concluded that a jury would have no function to perform when the application of the civil penalty would be merely mechanical. However, *Calore Freight* does not address the situation in which the administrative imposition of the penalty was not mechanical but involved the application of various factors to determine the existence, nature and amount of the civil penalty.

 Even though *Bendick, F. Ronci Co.,* and *Calore Freight* each suggests an instance in which a jury-trial right might adhere during Superior Court civil-enforcement proceedings of regulatory statutes, none directly addresses the jury-trial right as it relates to the legislatively authorized adjudication and imposition of a civil penalty at the administrative-agency level. This question of first impression therefore becomes whether the General Assembly has the authority to place the adjudication and imposition of civil penalties for the violation of regulatory statutes with an administrative agency without providing for the opportunity for a jury trial at any time during the adjudication of the alleged violation. We hold that the Legislature has the authority to create this regulatory and enforcement scheme without violating section 15 of article 1 of the Rhode Island Constitution.

## II

Although in *Bendick* we explained the inapplicability of the Seventh Amendment to the United States Constitution to the states, *Bendick* also demonstrates, in its reliance on *Tull,* that we look to Federal Seventh Amendment jurisprudence to inform our own analysis of the jury-trial right contained in article 1, section 15, of the Rhode Island Constitution. In this regard we are influenced by the distinction made in the federal system between public and private rights.

In its analysis of the right to a jury trial under the Seventh Amendment, the United States Supreme Court has developed two lines of cases—one for actions concerning "public rights" and another for trials enforcing individuals' "private rights." However

subtle the distinction may sometimes be, it is significant when determining a party's right to a jury trial.

The United States Supreme Court has long acknowledged a difference between private rights enforceable by individuals and public rights enforceable by the government.[5] *See Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. (18 How.) 272, 284, 15 L.Ed. 372, 377–78 (1856) ("there are matters, involving *public rights*, which may be presented in such [a] form that the judicial power is capable of acting on them, and which are susceptible of judicial determination, but which Congress may or may not bring within the cognizance of the courts of the United States, as it may deem proper" (emphasis added)). More recently, in *Atlas Roofing Co. v. Occupational Safety and Health Review Commission*, 430 U.S. 442, 97 S.Ct. 1261, 51 L.Ed.2d 464 (1977), the Court differentiated between public rights and private rights in determining the applicability of the Seventh Amendment to an administrative-enforcement proceeding brought pursuant to the Occupational Safety and Health Act of 1970 (OSHA), 29 U.S.C. §§ 651 to 678.

■ The Court stated:

"At least in cases in which 'public rights' are being litigated—*e.g.*, cases in which the Government sues in its sovereign capacity to enforce public rights created by statutes within the power of Congress to enact— the Seventh Amendment does not prohibit Congress from assigning the factfinding function and initial adjudication to an administrative forum with which the jury would be incompatible." 430 U.S. at 450, 97 S.Ct. at 1266, 51 L.Ed.2d at 472.

As we noted above, the essential question becomes the power of the Legislature to assign the adjudication of certain rights to an administrative forum in which no jury-trial right adheres. If the action involves the adjudication of public rights, no jury is required pursuant to the Seventh Amendment to the United States Constitution or section 15 of article 1 of the Rhode Island Constitution.

In *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), the Court held that the Seventh Amendment jury-trial right adhered in a suit brought by a bankruptcy trustee in order to recover fraudulent transfers made by the bankrupt to the defendant. In finding that the action to recover the fraudulent transfer was a private right, the Court further discussed the distinction between public and private rights. In relation to public rights the Court noted:

"Those cases in which Congress may decline to provide jury trials are ones involving statutory rights that are integral parts of a public regulatory scheme and whose adjudication Congress has assigned to an administrative agency or specialized court of equity. [W]e now refer to those rights as 'public' rather than 'private.' " *Id.* at 55 n. 10, 109 S.Ct. at 2797 n. 10, 106 L.Ed.2d at 49 n. 10.

■ We are persuaded by the public-rights doctrine developed by the United States Supreme Court and adopt it to analyze our jury-trial right in instances wherein the Legislature has assigned adjudication of civil penalties to an administrative agency.[6]

---

5. The United States Supreme Court has expanded its public-rights doctrine to include those rights enforced by private individuals that are "so closely integrated into a public regulatory scheme as to be a matter appropriate for agency resolution with limited involvement by the Article III judiciary." *Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. 568, 594, 105 S.Ct. 3325, 3339–40, 87 L.Ed.2d 409, 428 (1985); *see also Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 54, 109 S.Ct. 2782, 2797, 106 L.Ed.2d 26, 48 (1989) ("we rejected the view that 'a matter of public rights must at a minimum arise "between the government and others" ' "). *But see Granfinanciera*, 492 U.S. at 70, 109 S.Ct. at 2805, 106 L.Ed.2d at 59 (Scalia, J., concurring in

part and concurring in the judgment) ("I would return to the longstanding principle that the public rights doctrine requires, at a minimum, that the United States be a party to the adjudication"). Because the case before us involves the governmental enforcement of a public right, we take no position on whether rights enforced under a state environmental-regulatory scheme that are brought by private parties may be considered public rights.

6. The Supreme Court of Texas also has held recently that a jury-trial right does not adhere for enforcement of civil penalties under the Texas Clean Air Act. *Texas Association of Business v. Texas Air Control Board*, 852 S.W.2d 440, 450–52

Like the rights at question in *Atlas Roofing* and further defined in *Granfinanciera,* the environmental-enforcement action which DEM brought against National Velour clearly involves a public right. The state was a party to the action to enforce a statutory right that is part of a pervasive regulatory scheme. The Legislature has assigned adjudication of the Clean Air Act to the AAD of DEM. Moreover, in the declaration of policy contained in the Clean Air Act, the Legislature has declared specifically that it is

> "the public policy in the State of Rhode Island to preserve, protect, and improve the air resources of the state so as to promote the public health, welfare, and safety, to prevent injury or detriment to human, plant, and animal life, physical property and other resources, and to foster the comfort and convenience of the state's inhabitants." G.L.1956 (1989 Reenactment) § 23–23–2, as amended by P.L.1992, ch. 361, § 1.

It is incontrovertible that the environmental action brought by DEM against National Velour is a public right. Therefore, no jury-trial right adheres under section 15 of article 1 of the Rhode Island Constitution.

### III

National Velour argues that *Bendick* and *F. Ronci Co.* are dispositive of the issue at hand and that we should not look to Seventh Amendment jurisprudence or the public-rights doctrine in order to determine if National Velour's right to a jury trial has been impaired through the administrative imposition of this civil penalty. Although we noted above that neither *Bendick* nor *F. Ronci Co.* directly addresses whether the Legislature could assign the adjudication of a civil penalty to an administrative agency, we are mindful that these distinctions may not be readily apparent.

In *Bendick* it is significant that the environmental-enforcement actions were commenced in Superior Court, a factor that we recognized in stating that the action in question was "not susceptible of imposition by administrative proceedings." 558 A.2d at 945. Moreover in *Tull,* upon which we based our decision in *Bendick,* the United States Supreme Court specifically limited its holding in stating that it had "considered the practical limitations of a jury trial and its functional compatibility with proceedings outside of traditional courts of law in holding that the Seventh Amendment is not applicable to administrative proceedings." *Tull,* 481 U.S. at 418 n. 4, 107 S.Ct. at 1835 n. 4, 95 L.Ed.2d at 373 n. 4.[7] So whereas we found that the jury-trial right adhered in the action commenced in Superior Court, the analysis substantially changes when the adjudication of the right is placed in an administrative agency by the Legislature.[8]

(Tex.1993). In examining the jury-trial right contained in the Texas Constitution (which coincidentally is contained in article 1, section 15, of the Texas Constitution and also provides that "[t]he right of trial by jury shall remain inviolate"), the court performed an historical analysis and concluded that "these agencies' assessments of environmental penalties are not actions, or analogous actions, to those tried to a jury at the time the [Texas] constitution of 1876 was adopted." 852 S.W.2d at 451. Moreover, in a concurring and dissenting opinion, a justice (*with whom two other justices essentially concurred*) followed the United States Supreme Court's public-rights doctrine in determining that no jury-trial right adhered in the administrative adjudication and imposition of a civil penalty, although arguing that the public-rights doctrine must be limited to those proceedings "in which the government, as a real party in interest, enforces a regulatory or statutory scheme." *Id.* at 466 (Doggett, J., concurring and dissenting).

**7.** In *Atlas Roofing Co. v. Occupational Safety and Health Review Commission,* 430 U.S. 442, 97 S.Ct. 1261, 51 L.Ed.2d 464 (1977), the Court also found it significant that Congress assigned the adjudication to an administrative forum.

> "Congress is not required by the Seventh Amendment to choke the already crowded federal courts with new types of litigation or prevented from committing some new types of litigation to administrative agencies with special competence in the relevant field. This is the case even if the Seventh Amendment would have required a jury where the adjudication of those rights is assigned instead to a federal court of law instead of an administrative agency." *Id.,* 430 U.S. at 455, 97 S.Ct. at 1269, 51 L.Ed.2d at 475.

*See also Granfinanciera,* 492 U.S. at 51–52 n. 9, 109 S.Ct. at 2795 n. 9, 106 L.Ed.2d at 47 n. 9 (quoting *Atlas Roofing* ).

**8.** In assigning powers to an administrative agency to find facts and assess penalties, the legislative power may not be unlimited in clothing administrative agencies to conduct the type of

National Velour also argues that *F. Ronci Co.* disposes of this question and that we should reject the public-rights doctrine. *F. Ronci Co.* is illustrative of the dichotomy between the assessment of a civil penalty by an administrative agency and the assessment or enforcement of a civil penalty in a judicial tribunal. In *F. Ronci Co.* we recognized that the administrative agency had no power to assess a civil penalty since the statute did not clothe the agency with such power. Then we hypothesized the problem that an administrative agency would have if it sought the imposition or enforcement of a civil penalty presumably in a judicial tribunal. 561 A.2d at 881–82. Thus, in suggesting the right to a jury trial in our hypothesis, we relied on *Bendick,* and the line of federal cases, including the dissent by Justice Scalia in *Tull.* This line of cases deals with the requirement of a jury trial when imposition or enforcement of a civil penalty is sought in a judicial tribunal. The line of cases that authorize administrative agencies to assess civil penalties, when statutorily authorized to do so, includes *Atlas Roofing, Granfinanciera,* and *Calore Freight. See also Texas Association of Business v. Texas Air Control Board,* 852 S.W.2d 440 (Tex.1993). This often subtle distinction about whether an administrative agency may assess civil penalties without violation of the constitutional right to jury trial under the Federal and Rhode Island Constitutions is based upon the historical fact that the framers of the Bill of Rights in 1789 and the voters who ratified it by 1791 and the framers of the Rhode Island Constitution in 1842 did not contemplate the existence of and the important role that administrative agencies would necessarily fulfill in the modern era.

Thus upon reflection we recognize that in both the federal and the state constitutional framework, the right to jury trial is not included in the factfinding or penalty assessments entrusted to administrative agencies. This is true whether the factfinding or penalty assessment is rigidly controlled by statute, as in *Calore,* or is subject to the discretion of the agency factfinder as in *Atlas Roofing,* Granfinanciera, or *Texas Association of Business.*

In conclusion, we answer the first certified question in the negative. The Legislature may create public rights and assign their administrative adjudication to an administrative agency pursuant to G.L.1956 (1993 Reenactment) §§ 42–17.6–3, 42–17.6–4, 42–17.7–2, and 42–17.7–6.

## IV

The answer to the second certified question—whether a jury-trial right attaches when an administratively determined violation is appealed to the Superior Court—must necessarily be the same as to the first. We held that no jury-trial right adhered at the administrative-agency level because the Legislature had the power to create a right and then assign adjudication of that right to an administrative forum. The same logic requires the conclusion that the Legislature has the power to place appellate review of that adjudicated violation in Superior Court sitting without a jury. The jury, as factfinder, would have no function to serve at the appellate stage since the facts would have been adjudicated at the administrative agency. The review by the Superior Court is a continuation of the administrative process and extremely limited in respect to findings of fact. To hold otherwise would create a trial de novo in the Superior Court and thereby prevent the Legislature from exercising the power that we held it validly possesses when we answered the first certified question.

Having answered both certified questions in the negative, the papers in this case may be remanded to the Superior Court for further proceedings.

litigation that has heretofore been solely within the power of judicial tribunals. This is a ques-

tion we would reserve until a case squarely presents it to us.